# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BECKY A. SELBY,** | : | CIVIL ACTION NO. 1:19-CV-61 |
| | : | |
| **Plaintiff** | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **HOLLY T. SCHROEDER and** | : | |
| **TENNESSEE WALKING HORSE** | : | |
| **BREEDERS & EXHIBITORS** | : | |
| **ASSOCIATION (TWHBEA),** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Becky A. Selby commenced this lawsuit against defendants Holly T. Schroeder and Tennessee Walking Horse Breeders' & Exhibitors' Association (the "Association"), asserting breach of contract and various tort claims. Defendants move to dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim for relief. (Docs. 30, 39). We need not reach defendants' arguments regarding subject-matter jurisdiction, venue, or sufficiency of the complaint because this court lacks personal jurisdiction over both defendants.

## I. Factual Background & Procedural History

Selby is a citizen of Pennsylvania, with her current residence in Halifax, Pennsylvania. (Doc. 26 ¶ 8). Schroeder is a citizen of Tennessee and works as a "professional breeder, raiser, and seller of horses," selling horses in Tennessee and surrounding states, as well as internationally. (Id. ¶¶ 9, 9(a)). The Association is a nonprofit organization located in Tennessee that "collects, records, and preserves

the pedigree of Tennessee Walking Horses and maintains a registry" of those details. (Id. ¶¶ 10, 10(a)).

On October 2, 2017, Schroeder offered for sale—via social media—a blind, 7-year-old female horse named "Niko." (Id. ¶¶ 11, 15, 17(a); Doc. 1-2 at 2). Niko was, and continues to be, registered in Schroeder's name with the Association. (Doc. 26 ¶¶ 12-13). Selby and Schroeder entered into an oral agreement in principle for the sale of Niko on October 3, 2017. (Id. ¶ 17). Selby alleges that the agreement consists of the following terms: due to the extensive care Niko required, Schroeder would have Niko inseminated and then convey her to Selby in exchange for (1) Selby providing lifetime care for Niko at Selby's expense, and (2) giving Schroeder Niko's first healthy foal. (Id. ¶¶ 17, 22). These requirements were "in lieu" of Schroeder's $1,000.00 asking price for the horse. (Id. ¶ 18; Doc. 1-2 at 35 ¶ 2(b)). Schroeder also purportedly agreed that, following the birth of Niko's first foal while in Selby's care, Schroeder would transfer Niko's registration to Selby. (Doc. 26 ¶ 21).

At the time of sale, Niko was being sheltered at a veterinary hospital in Kentucky. (Id. ¶¶ 23-24). Per the parties' negotiations, Selby, at her own expense, drove to Kentucky, picked up Niko at the veterinary hospital, and transported the mare back to Pennsylvania. (Id. ¶¶ 23-24). Selby alleges that Schroeder then reneged on the parties' oral agreement by demanding that she receive *all* foals born to Niko—not just the firstborn—and that Selby care for Niko for life but without transfer of registration or ownership. (Id. ¶ 25).

Selby asserts that she and her attorney attempted to amicably resolve the dispute with Schroeder and the Association throughout 2018, to no avail. (Id. ¶¶ 28-

2

38).  Schroeder purportedly refused to honor the terms of the agreement, and the Association declined to transfer Niko's registration to Selby because Schroeder had verbally objected to the change.  (Id. ¶¶ 26-30, 38).

On January 9, 2019, Selby learned that Schroeder had filed a criminal complaint in Kentucky asserting that Selby had stolen Niko.  (Id. ¶¶ 39-40).  The next day, Selby commenced this civil action against Schroeder alleging breach of contract, defamation, and fraud.  Schroeder moved to dismiss all counts under various provisions of Federal Rule of Civil Procedure 12, and in response Selby amended her complaint.  Selby's amended complaint joins the Association as a defendant under the breach of contract count, adds a claim against Schroeder for malicious prosecution, and leaves much of the rest of the original complaint intact.  Both defendants move to dismiss the amended complaint under Rule 12, and those motions are ripe for disposition.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction.  FED. R. CIV. P. 12(b)(2).  In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and

3

required.  Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990) (citation omitted); see Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation.  Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).  In the absence of a hearing, a court must accept the plaintiff's jurisdictional allegations as true and construe any disputed facts in favor of the plaintiff.  Id. (citations omitted); O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).  Once a defendant has challenged the court's exercise of personal jurisdiction, the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper."  Metcalfe, 566 F.3d at 330 (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)).  Personal jurisdiction must be proven by a preponderance of the evidence.  Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam, 687 F.3d 163, 167 (3d Cir. 2012) (quoting Carteret Sav. Bank, 954 F.2d at 146).

## III. Discussion

A federal court may exercise personal jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum.  See FED. R. CIV. P. 4(k)(1)(A).  The Pennsylvania Long-Arm Statute grants jurisdiction coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment.  See 42 PA. CONS. STAT. § 5322(b).  Our constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310

4

(1945). Under this test, the plaintiff must show that the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (internal quotation marks and citation omitted); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that he may be subject to suit in that forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001); Marten, 499 F.3d at 296. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (internal citation omitted).

Federal courts must possess one of two forms of personal jurisdiction to comport with these principles. See D'Jamoos *ex rel.* Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-15 (1984)). General jurisdiction allows a court to exercise jurisdiction over all claims against a party that possesses contacts with the forum state so "'systematic and continuous' as to render them essentially at home" there. Daimler AG v. Baumen, 571 U.S. 117, 127 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Helicopteros, 466 U.S. at 414 n.9)); Chavez v. Dole Food Co., 836 F.3d 205, 223 (3d Cir. 2016) (*en banc*). Specific jurisdiction, on the other hand, allows the court to hear only claims arising out of or relating to the defendant's contacts with the forum state. Helicopteros, 466

5

U.S. at 414 n.8; Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006).

### A. Personal Jurisdiction Over Defendants

Selby does not contend that either defendant is subject to general personal jurisdiction in Pennsylvania, nor could she. Applying Daimler to the facts in the amended complaint renders general jurisdiction inapt. Both defendants are from Tennessee, and neither has contacts with Pennsylvania that are so "systematic and continuous as to render them essentially at home" in the Commonwealth. See Daimler, 571 U.S. at 127 (citation omitted). Consequently, Selby must demonstrate specific jurisdiction over defendants for her breach of contract and tort claims to avoid dismissal. Selby can attempt to make such a showing through the traditional "minimum contacts" test or—because some of her claims allege intentional torts—under the "effects test" outlined in Calder v. Jones, 465 U.S. 783 (1984). Because the relevant forum contacts Selby alleges are so attenuated, we conclude that Selby cannot establish specific personal jurisdiction under either test.

To exercise specific jurisdiction over a defendant under the traditional "minimum contacts" test, the court must find that (1) the defendant purposefully directed its activities at the forum, (2) each cause of action "arise[s] out of or relate[s] to at least one" of the defendant's activities, and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." D'Jamoos, 566 F.3d at 102 (internal quotation marks and citations omitted); O'Connor, 496 F.3d at 317. The purposeful-availment and relatedness inquiries are often described as requiring "minimum contacts" between the defendant and the relevant forum.

*re* Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 558 (M.D. Pa. 2009) (Conner, J.) (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451 (3d Cir. 2003)). The defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum," but physical presence in the forum is not required. O'Connor, 496 F.3d at 317 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "Unilateral activity" by a plaintiff "claim[ing] some relationship with a nonresident defendant" is insufficient to establish that the defendant purposely directed its activities at the forum. D'Jamoos, 566 F.3d at 103 (quoting Hanson, 357 U.S. at 253); O'Connor, 496 F.3d at 317. Determinations of specific jurisdiction are generally claim specific because "the analysis depends on the relationship between the claims and contacts." Marten, 499 F.3d at 296 (citing Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (collecting cases)).

A plaintiff advancing an intentional tort claim may alternatively establish specific jurisdiction under the "effects test" outlined in Calder v. Jones, 465 U.S. 783 (1984). IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259-60 (3d Cir. 1998). The Calder effects test is to be applied narrowly. Id. at 263-64; Marks v. Alfa Grp., 369 F. App'x 368, 370 (3d Cir. 2010) (nonprecedential). Under this test, a court may exercise specific jurisdiction over a defendant when the plaintiff shows that (1) the defendant committed an intentional tort; (2) "[t]he plaintiff felt the brunt of the harm in the forum" rendering that forum the "focal point" of the harm resulting from the tort; and (3) the defendant *expressly aimed* his or her "tortious conduct at that forum such that the forum can be said to be the focal point of the tortious

7

activity." Marten, 499 F.3d at 297 (emphasis added) (quoting IMO Indus., Inc., 155 F.3d at 265-66).

We begin by summarizing Selby's claims. Under Count 1,[1] Schroeder allegedly breached the October 2017 agreement by refusing to transfer ownership and registration of Niko to Selby. (Doc. 26 ¶ 44(a)(i)). Count 1 also asserts that the Association breached "an agreement with [Selby] regarding membership in the Association" by "refusing to transfer registration of the mare" despite Selby following the Association's rules. (Id. ¶ 44(a)(ii)). In Count 2, Schroeder purportedly defamed Selby by swearing out a false criminal complaint. (Id. ¶ 44(b)). According to Count 3, Schroeder fraudulently induced Selby to enter an agreement, the terms of which Schroeder had no intention of honoring once Selby had substantially performed her obligations. (Id. ¶ 44(c)). And in Count 4, Selby alleges that Schroeder is liable for malicious prosecution for filing a baseless criminal complaint against her. (Id. ¶ 44(d)). Both defendants have moved for dismissal under Rule 12(b)(2), so we take each defendant in turn.

1. *The Association (Count 1)*

There is no basis for exercising personal jurisdiction over the Association under the minimum contacts test, the only test that applies to this breach of contract claim. The reason is quite simple: Selby has not pled, let alone established by competent evidence, *any* forum contacts by the Association. Every action that

---

[1] Selby does not delineate her causes of action by count; we apply this terminology *sua sponte* for clarity and ease of reference.

8

Selby alleges the Association took relative to the instant breach of contract claim occurred outside of Pennsylvania. (See Doc. 26 ¶¶ 37-38, 43, 44(a)(ii)). Moreover, in response to the Association's Rule 12(b)(2) motion, Selby discusses only subject-matter jurisdiction, a challenge the Association has not raised. (See generally Doc. 41 at 9-10).

Selby contends that an "analysis of personal jurisdiction" is not required because this court can exercise supplemental jurisdiction over the claim against the Association pursuant to 28 U.S.C. § 1367. (See id.) Selby is incorrect. Due process requires this court to have personal jurisdiction over every defendant before it, see Bristol-Myers Squibb Co. v. Superior Court of California, 582 U.S. __, 137 S. Ct. 1773, 1783 (2017) (quoting Rush v. Savchuk, 444 U.S. 320, 332 (1980)), and Section 1367 is concerned with subject-matter jurisdiction for claims, not *in personam* jurisdiction. See 28 U.S.C. § 1367; 4A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1069.7 (4th ed. 2019). Because Selby has failed to establish that the Association directed any relevant activities at the forum state, O'Connor, 496 F.3d at 317, we cannot exercise personal jurisdiction over this defendant.

### 2. *Schroeder (Counts 1 through 4)*

Selby's attempts to establish minimum contacts for Schroeder likewise fall short. Selby initially missteps by failing to analyze the alleged forum contacts on a claim-by-claim basis. (See generally Doc. 36 at 7-10). Specific personal jurisdiction determinations are "claim specific"; simply because the court has personal jurisdiction over a defendant regarding one particular claim "does not necessarily

9

mean it has personal jurisdiction over that same defendant" as to other claims asserted. See Remick, 238 F.3d at 255 (citations omitted). The four claims at issue here concern different alleged wrongdoing and cannot be lumped together or aggregated for jurisdictional purposes. See id.

More problematic for Selby is that the forum contacts she proffers are insufficient for any of the claims asserted against Schroeder. The only contacts with Pennsylvania that Selby alleges are that (1) Schroeder communicated with Selby, a Pennsylvania resident, via social media during negotiations for the sale of Niko; (2) Schroeder "directed her solicitation" of goods and services (in particular, Niko) toward out-of-state customers, including Selby; and (3) Schroeder agreed to a sale whereby Niko would be transported from Kentucky to live in Pennsylvania. (See Doc. 36 at 7-10).

We initially observe that none of these contacts have any connection to Selby's claims for defamation or malicious prosecution. They concern only breach of contract and fraud. We further observe that Selby's reasoning for why these claims are properly brought in Pennsylvania actually undercuts her position. Selby repeatedly contends that Schroeder did not just target Selby, but also potential buyers in numerous other states and countries. For example, Selby asserts that Schroeder "directed her solicitation towards everyone, not just persons in" Tennessee, (id. at 7), "reached out over the internet to the rest of the world," (id. at 8), offered Niko for sale "in multiple states . . . including Pennsylvania and many others," (id.), reached "out to [Selby] and to others in other states and countries," (id. at 9), and "announced [the sale] to the rest of the world," (id.). These assertions

demonstrate that Schroeder was *not* specifically targeting or directing advertising at Pennsylvania; she simply found a willing buyer who happened to be from Pennsylvania.

Selby also maintains that the current Pennsylvania presence of Niko and her firstborn foal is a relevant forum contact, but even assuming this is true it would not tip the scales. At the time the oral agreement was formed, Niko—the primary object of the contract—was being sheltered in Kentucky. And during formation, the parties communicated entirely online or through cellular telephones—neither party traveled to the other's location or physically mailed documents into the other's state. In sum, Schroeder's sparse and coincidental contacts with Pennsylvania were not "instrumental in either the formation of the contact or its breach." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted). Nor are they material to the related fraud allegations. We thus conclude that Schroeder's attenuated contacts with Pennsylvania are insufficient to establish personal jurisdiction over Schroeder on any claims in the amended complaint.[2]

### B. Dismissal or Transfer of Amended Complaint

Selby does not request transfer as an alternative to dismissal, nor do defendants discuss it. Nevertheless, we must consider whether transfer is in the

---

[2] We reach this conclusion under either the traditional minimum contacts test or the Calder effects test. As the foregoing analysis demonstrates, none of Schroeder's allegedly tortious conduct was "expressly aimed" at Pennsylvania. See Marten, 499 F.3d at 297.

11

interest of justice.  See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 132 (3d Cir. 2020).

The basis for transfer is 28 U.S.C. § 1631.  Section 1631 addresses the specific situation where, as here, "a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction."  See 28 U.S.C. § 1631; Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 218 & n.9 (3d Cir. 2002) (explaining that Section 1631 permits transfer for lack of personal jurisdiction).[3]  The statute provides that the original court "shall, if it is in the interest of justice, transfer such action . . . to any other such court" in which the case could have been brought when it was filed.  28 U.S.C. § 1631.  Thus, a party seeking transfer under Section 1631 must show that (1) the claim or claims could have been properly brought in the intended transferee court, and (2) transfer would be in the interest of justice.

We decline to perform a detailed transfer analysis without first hearing from the parties.  We leave to the litigants the task of determining, in the first instance, where this case may be transferred and whether transfer would be in the interest of justice, accounting for such considerations as venue and statutes of limitations.  See Danziger & De Llano, 948 F.3d at 132.

---

[3] There is a circuit split regarding whether Section 1631's use of the word "jurisdiction" includes personal jurisdiction or contemplates only subject-matter jurisdiction.  See 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3842 & n.18 (4th ed. 2008).  Third Circuit decisions, although never squarely addressing the question, clearly suggest that Section 1631 permits transfer for lack of personal jurisdiction.  See Chavez, 836 F.3d at 224 & n.100; D'Jamoos, 566 F.3d at 107; Island Insteel Sys., 296 F.3d at 218 & n.9; Renner v. Lanard Toys Ltd., 33 F.3d 277, 284 (3d Cir. 1994); Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 544 (3d Cir. 1985).

**IV.     Conclusion**

We will grant in part defendants' motions (Doc. 30, 39) to dismiss under Federal Rule of Civil Procedure 12 to the extent that we find that this court lacks personal jurisdiction over defendants as to all claims in the amended complaint. We will defer ruling on whether to dismiss these claims without prejudice or transfer them to another district court pending receipt of supplemental briefing. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    February 18, 2020